**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WELLS FARGO BANK, NATIONAL ASSOCIATION,
AS TRUSTEE FOR MORGAN STANLEY BANK OF
AMERICA MERRILL LYNCH TRUST 2013-C9,
COMMERCIAL MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2013-C9,

Plaintiff,

- against -

700 MILFORD HOLDINGS LLC; DAVID WERNER;
RP/HH MILFORD PLAZA GROUND TENANT, LP;
RP/HH MILFORD PLAZA LESSEE, LP; STATE OF
NEW YORK DEPARTMENT OF TAXATION AND
FINANCE; NEW YORK CITY DEPARTMENT OF
FINANCE; NEW YORK CITY CRIMINAL COURT;
NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD; NEW YORK CITY WATER BOARD; and
"JOHN DOES 1-100" (the latter names being fictitious and
unknown to the plaintiff but intending to designate tenants
residing at or persons or entities having an interest in the
premises described in the Complaint herein),

Defendants.

1:21-cv- 6059

**COMPLAINT FOR**
**FORECLOSURE**

**Premises Address:**
700 Eighth Avenue
New York, NY 10036
Block: 1016
Lots: 1001 and 1002

Plaintiff Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Bank of

America Merrill Lynch Trust 2013-C9, Commercial Mortgage Pass-Through Certificates, Series

2013-C9 ("Plaintiff" or "Lender"), for its Complaint, alleges as follows:

PARTIES

1.      Lender is a trust (the "Trust"). The Trust is a "real estate mortgage investment

conduit" created solely under the Internal Revenue Code, 26 U.S.C. § 860D and whose citizenship

is determined by the citizenship of its trustee. *Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs.,*

*LLC*, No. 16 Civ. 9112, 2017 U.S. Dist. LEXIS 95833, at *6-7 (S.D.N.Y. June 21, 2017) (holding

that the citizenship of Wells Fargo Bank, N.A., as trustee, controlled for purposes of diversity

jurisdiction).  Wells Fargo Bank, N.A., a national banking association, is the trustee of the Trust ("Trustee").  As a national banking association, Trustee is a citizen of the state where its main office is located, as designated in its articles of association.  *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016); *accord Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 709 (9th Cir. 2014) (finding "a national bank is a citizen only of the state in which its main office is located"); *see also* 28 U.S.C. § 1348.  Trustee's main office, as set forth in its articles of association, is located in Sioux Falls, South Dakota.  Therefore, the Trustee and Trust are citizens of South Dakota.  *See also Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 95833, at *7 (holding that Wells Fargo Bank, N.A. is a citizen of South Dakota).

2.     Upon information and belief, defendant 700 Milford Holdings LLC ("Borrower") is a Delaware limited liability company with a last known address of c/o David Werner, 780 Third Avenue, 25th Floor, New York, New York 10017.  Borrower is named as a defendant by reason of being the mortgagor under the Mortgage (defined herein), and to extinguish all estate, right, title or interest that Borrower holds in and to certain real property and improvements located in the Borough of Manhattan, County of New York, State of New York, known as and by the street address of 700 Eighth Avenue, New York, New York 10036, also known as Block 1016, Lot 1002 (the "Premises"), including Borrower's fee estate in the Hotel Unit (defined below) (the "Land"), in the 700 Eighth Avenue Condominium (the "Condominium"), and in the fixtures, improvements, equipment and related personal property located thereon (the "Personal Property," and together with the Land, as more particularly described in the Mortgage attached as Exhibit A - Legal Description thereto, the "Property"), and to determine its liabilities and obligations under the

22447047

"Loan Documents," as more fully defined and described herein.[1]  Upon information and belief, Borrower's members are citizens of Delaware.

3.      Upon information and belief, defendant David Werner ("Mr. Werner" or "Guarantor") is an individual residing at 1751 58th Street, Brooklyn, New York 11204.  Mr. Werner is being named as a defendant solely to preserve Lender's right to seek a deficiency judgment or any other amounts owed on account of Mr. Werner's liability and obligations under the Guaranty (defined herein).  Upon information and belief, Mr. Werner is a citizen of New York.

4.      Upon information and belief, defendant RP/HH Milford Plaza Ground Tenant, LP ("Tenant") is a Delaware limited partnership whose principal place of business, upon information and belief, is in Dallas, Texas.  Tenant is named as a defendant to extinguish all estate, right, title or interest it holds in and to the Property.  Upon information and belief, Tenant's partners are citizens of Delaware.

5.      Upon information and belief, defendant RP/HH Milford Plaza Lessee, LP ("Subtenant") is a Delaware limited partnership whose principal place of business, upon information and belief, is in Dallas, Texas.  Subtenant is named as a defendant to extinguish all estate, right, title or interest it holds in and to the Property.  Upon information and belief, Subtenant's partners are citizens of Delaware.

6.      Upon information and belief, defendant The State of New York Department of Taxation and Finance, an agency and/or instrumentality of the State of New York, having a designated address for service of process at c/o Office of Counsel, Building 9, W A Harriman

---

[1]      Capitalized terms used but not defined herein shall have the meaning ascribed to them elsewhere in this Complaint or in the Loan Documents (defined herein).

Campus, Albany, New York 12227, is named as a defendant due to possible unpaid taxes in connection with the Property.  Upon information and belief, The State of New York Department of Taxation and Finance is a citizen of New York.

7.      Upon information and belief, defendant The New York City Department of Finance, an agency and/or instrumentality of the City of New York, having a designated address for service of process at the Manhattan Business Center, 66 John Street, Room 104, New York, New York 10038, is named as a defendant due to possible unpaid amounts that may be owed in connection with the Property, including among other amounts, $92,314.51 in Business Improvement District charges (including interest) and $5,366,026.11 in unpaid taxes (including interest), both of which were due to be paid on or before January 1, 2021.  Upon information and belief, The New York City Department of Finance is a citizen of New York.

8.      Upon information and belief, defendant The New York City Criminal Court, an agency and/or instrumentality of the City of New York, with an address at 346 Broadway, New York, New York 10013, is named as a defendant for the purpose of foreclosing any unpaid judgments related to the Property.  Upon information and belief, The New York City Criminal Court is a citizen of New York.

9.      Upon information and belief, defendant The New York City Environmental Control Board, an agency, and/or instrumentality of the City of New York, with an address at 66 John Street, 10th Floor, New York, New York 10038, is named as a defendant due to possible unpaid amounts that may be owed in connection with the Property.  Upon information and belief, The New York City Environmental Control Board is a citizen of New York.

4

22447047

10.     Upon information and belief, defendant The New York City Water Board, an agency and/or instrumentality of the City of New York, with an address at 59-17 Junction Boulevard, 8th Floor, Flushing, New York 11373, is named as a defendant due to possible unpaid amounts that may be owed in connection with the Property.  Upon information and belief, The New York City Water Board is a citizen of New York.

11.     The "John Doe" defendants constitute potential tenants, occupants, or other persons and entities who may be in possession of, or may have a possessory lien or other interest in the Property and which possessory lien or other interest, if any, is subsequent and subordinate to the Mortgage.  Said defendants are made party defendants herein for the purpose of terminating their interests in the Property.  Upon information and belief, the "John Doe" defendants are citizens of New York.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that this action because there is complete diversity of citizenship between the parties in that Lender is a citizen of South Dakota and, upon information and belief, Defendants are citizens of New York or Delaware, and the amount in controversy exceeds the sum of $75,000 exclusive of interest, costs and attorneys' fees.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the property that is the subject of this action is located in the Southern District of New York.

5

22447047

## FACTUAL BACKGROUND

**The Property**

14.     The Condominium Declaration dated as of February 27, 2013 (the "Condominium Declaration"), was duly recorded in the Office of the New York City Register, State of New York ("Office of the City Register") under CRFN 2013000092523 on March 6, 2013.  Pursuant to the Condominium Declaration, RP/HH Milford Plaza Owner, LP, as declarant ("Declarant" or "Original Landlord") provided that the Property at issue in this action is comprised of a portion of the Condominium, including "all easements, rights and appurtenances belonging thereto and all other property, real, personal or mixed, intended for use in connection therewith . . . [pursuant] to the provisions of the Condominium Act. . . ."

15.     Specifically, as more fully set forth in the Condominium Declaration, the Condominium consists of:

> Common Elements and two (2) units: one (1) unit located on portions of the Sub-Level 1, Ground Level, and Lobby Level of the Building ("Retail Unit"); and one (1) Unit to be located on portions of Sub-Level 3, Sub-Level 2, Sub-Level 1, Ground Level, Lobby Level, Mezzanine Level and the Third Floor through the Thirty-First Floor of the Building (the "Hotel Unit").

16.     The Commercial Condominium Unit Deed (Without Covenants Against Grantors Acts) (the "Condominium Deed"), dated as of March 8, 2013, was duly recorded in the Office of the City Register under CRFN 2013000104402.  Pursuant to the Condominium Deed, Declarant conveyed the Hotel Unit to Borrower, together with an undivided 96% interest in the Common Elements (as such term is defined in the Declaration), and together with all appurtenances to the Hotel Unit and all of the estate and rights of the Declarant in and to the Hotel Unit.

6

22447047

17.     Pursuant to a lease dated as of March 7, 2013 (the "Lease") between Declarant and Tenant, Tenant leased the Property from Declarant.

18.     Pursuant to that certain Assignment and Assumption of Lease dated as of March 8, 2013, and duly recorded on March 14, 2013 as CRFN 2013000104403 in the Office of the City Register, between Declarant and Borrower ("Lease Assignment"), Declarant assigned all of Declarant's rights, title and interests, as landlord in and to the Lease to Borrower.

19.     Section 15(b) of the Lease provides:

> Subject to the provisions of Section 15(f) below, this Lease, and all rights of Tenant hereunder, are and shall be subject and subordinate to the lien of all Mortgages.  This Section 15(b) shall be self-operative and no further instrument of subordination shall be required.  In confirmation of such subordination, Tenant shall promptly execute, acknowledge and deliver any instrument that Landlord or a Mortgage may reasonably request to evidence such subordination.

20.     Section 15(d) of the Lease provides, in pertinent part:

> If any (i) Mortgagee, or any designee of any Mortgagee shall succeed to the rights of Landlord under this Lease, whether through possession or foreclosure action or delivery of a new lease or deed, or (ii) any third party not affiliated with Landlord shall succeed to the rights of Landlord under this Lease through a Mortgage foreclosure action, then at the request of such party so succeeding to Landlord's rights (a "Successor Landlord"), and conditioned upon Successor Landlord's written agreement to accept Tenant's attornment, Tenant shall attorn to and recognize such Successor Landlord as Tenant's landlord under this Lease and shall promptly execute and deliver any instrument that such Successor Landlord may reasonably request to evidence such attornment.

21.     Pursuant to a lease agreement dated March 7, 2013 (the "Sublease"), Tenant, as sublandlord, leased the Property to Subtenant.

22.     Section 12 of the Sublease provides, in pertinent part:

7

22447047

> This Sublease is subject and subordinate to the (i) Lease, and to all leases, mortgages and other rights or encumbrances to which the Lease is subject or subordinate, (ii) Qualifying Mortgages (as defined in the Lease), and to all mortgages and/or deeds of trust encumbering Sublandlord's interest in the Premises and (iii) all easements and rights-of-way Sublandlord hereafter grants pursuant to Section 39 (Retail Easements) of the Lease.

23.     Among other defaults, Tenant has, upon information and belief, failed to comply with the terms of the Lease by failing to timely pay Base Rent.  Accordingly, an Event of Default has occurred and is continuing under the Lease.

24.     Upon information and belief, Borrower sent Tenant a letter dated April 27, 2020 (the "Reservation of Rights Letter"), wherein Borrower reminded "Tenant of its failure to timely pay Base Rent due on April 1, 2020 (the "Specified Default")" and that as a result, "the Specified Default has matured into an Event of Default pursuant to Section 19(a)(1) of the Lease (the "Current Event of Default")."   The Reservation of Rights Letter notified Tenant of the Current Event of Default and advised "Tenant that Landlord hereby expressly reserves all of its claims, rights and remedies, including, all claims, rights and remedies available to Landlord under the Lease, at law or in equity with respect to the Current Event of Default and any other default or Event of Default that may exist under the Lease."

**The Loan**

25.     Borrower, the owner of the Property, entered into a Loan Agreement dated March 8, 2013 (the "Loan Agreement") with Morgan Stanley Mortgage Capital Holdings LLC ("Morgan Stanley").  A true and correct copy of the Loan Agreement is attached as Exhibit A.  Pursuant to the Loan Agreement, Borrower borrowed a loan in the maximum principal amount of $275,000,000.00 (the "Loan") from Morgan Stanley.  Exhibit A § 1.1, at 11; *id*. § 2.1.3, at 21.  The

8

Loan is evidenced by the Loan Agreement, by and between Morgan Stanley and Borrower (as the same may be further amended, restated, replaced, supplemented or otherwise modified from time to time).  Exhibit A (Preamble), at 1.

26.    The Loan was further evidenced by a Consolidated, Amended and Restated Promissory Note dated March 8, 2013 executed by Borrower in favor of Morgan Stanley in the principal amount of $275,000,000.00 (the "Original Note").   A true and correct copy of the Original Note is attached as Exhibit B.

27.    Borrower and Morgan Stanley entered into a Note Splitter and Loan Agreement Modification Agreement dated as of March 8, 2013 (the "Note Splitter Agreement").  A true and correct copy of the Note Splitter Agreement is attached as Exhibit C.  Pursuant to the Note Splitter Agreement, the parties thereto desired "to split the Debt (as defined in the Loan Agreement) into three separate and distinct debts and to modify the Original Note to provide that the Original Note may be severed and split into [sic] four (4) separate and distinct replacement notes."  Exhibit C (Recitals), at 1.

28.    Pursuant to the Note Splitter Agreement, the Loan evidencing the Original Note was split into that certain Promissory Note A-1 dated as of March 8, 2013 in the amount of $150,000,000.00 ("Note A-1"), that certain Promissory Note A-2 dated as of March 8, 2013 in the amount of $110,000,000.00 ("Note A-2") and that certain Promissory Note A-3 dated as of March 8, 2013 in the amount of $15,000,000.00 ("Note A-3"), each made by Borrower in favor of Morgan Stanley (individually and/or collectively, as the context may require, the "Note"), true and correct copies of which are attached as Exhibits D, E, and F, respectively.

9

29.     Morgan Stanley assigned its interests in Note A-1 and Note A-3 to Lender pursuant to two separate alonges (the "A-1 and A-3 Allonges").  True and correct copies of the A-1 and A-3 Allonges are attached as Exhibits G and H, respectively.

30.     Morgan Stanley assigned its interests in Note A-2 to Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2013-C10, Commercial Mortgage Pass-Through Certificates, Series 2013-C10 ("Non-Lead Lender") pursuant to a separate allonge (the "First A-2 Allonge").  A true and correct copy of the First A-2 Allonge is attached as Exhibit I.

31.     Non-Lead Lender assigned its interests in Note A-2 to Lender pursuant to a separate allonge (the "Second A-2 Allonge").  A true and correct copy of the Second A-2 Allonge is attached as Exhibit J.

32.     Lender is the current and lawful holder of the Note.

33.     Pursuant to the Note, Borrower unconditionally promised to pay Lender the maximum principal amount of up to $275,000,000.00.

34.     Article 2 of the Note provides:

> The Debt shall without notice become immediately due and payable at the option of Lender if, subject to any notice and cure provisions expressly provided for in Section 10.1(a) of the Loan Agreement, any payment required in this Note is not paid on or prior to the date when due or if not paid on the Maturity Date or on the happening of any other Event of Default

Exhibit B, art. 2 at 2; Exhibit D, art. 2 at 1; Exhibit E, art. 2 at 1; Exhibit F, art. 2 at 1.

35.     The Loan Agreement provides:

> Interest on the outstanding principal balance of the Loan shall be calculated by multiplying (a) the actual number of days elapsed in

10

the period for which the calculation is being made by (b) a daily rate based on a three hundred sixty (360) day year (that is, the Applicable Interest Rate or the Default Rate, as then applicable, expressed as an annual rate divided by 360) by (c) the outstanding principal balance. The accrual period for calculating interest due on each Monthly Payment Date shall be the fifth (5th) day of the immediately preceding calendar month through and including the fourth (4th) day of the calendar month in which the Monthly Payment Date occurs.

Exhibit A § 2.2.4, at 22.

36.     Under the Loan Agreement, the "Default Rate" is defined as, "with respect to the Loan, a rate per annum equal to the lesser of (i) the Maximum Legal Rate or (ii) five percent (5%) above the Applicable Interest Rate." Exhibit A § 1.1, at 5.

37.     Pursuant to the Loan Agreement, Borrower was required to "make a payment to Lender of interest only on the outstanding principal balance of the Loan calculated in accordance with Section 2.2.4 hereof on the Monthly Payment Date occurring in May, 2013, and on each Monthly Payment Date thereafter to and including the Effective Maturity Date." Exhibit A § 2.3.1, at 22-23.

38.     The Loan Agreement defines "Monthly Payment Date" as "the fifth (5th) day of every calendar month occurring during the term of the Loan, and if such day is not a Business Day, then the Business Day immediately preceding such day, commencing on May 5, 2013, and continuing to and including the Maturity Date." Exhibit A § 1.1, at 12.

39.     The Loan Agreement further provides that "[a]ll payments required to be made by Borrower hereunder or under the Note or the other Loan Documents shall be made irrespective of, and without deduction for, any setoff, claim or counterclaim and shall be made irrespective of any defense thereto." Exhibit A § 2.3.5(c), at 24.

**The Mortgage**

40.     To secure the payment and performance in full of the Note and other amounts due and owing to Morgan Stanley in connection with the Loan, Borrower executed and delivered, among other things, that certain Mortgage and Agreement of Consolidation and Modification of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage") dated as of March 8, 2013 in favor of Morgan Stanley.  The Mortgage was duly recorded in the Office of the City Register on March 14, 2013 as CRFN 2013000104407.  A true and correct copy of the recorded Mortgage is attached as Exhibit K.

41.     Under the Mortgage, Borrower granted to Morgan Stanley a first priority mortgage lien and security interest in and to the Property, together with its rights, interests, and estates then owned or thereafter acquired by Borrower.  The Mortgage encumbers the Property, and all improvements thereon and appurtenances thereto, described in each of the documents.  Exhibit K (Recitals), at 1-3; *id*. § 1.1, at 3-7.

42.     The Mortgage was assigned by that certain Assignment of Mortgage made by Morgan Stanley to Lender dated as of April 30, 2013, and duly recorded May 21, 2013 as CRFN 2013000204279 in the Office of the City Register.

43.     The Note is also secured by, among other things, the Assignment of Leases and Rents (the "Assignment of Leases and Rents") contained in paragraph 1.1(h) of the Mortgage, which Assignment of Leases and Rents encumbers the Property more particularly described in the Mortgage.  Exhibit K § 1.1(h), at 5-6; *id*. (Exhibit A - Legal Description), pdf p. 35.

44.     Section 1.2 of the Mortgage provides:

> Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to the terms of Section 7.1(h) of this Security Instrument and the Loan Agreement, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents.  Borrower shall hold the Rents or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such terms.

Exhibit K § 1.2, at 7.

45.     The Mortgage was "given for the purpose of securing the Debt, which by its definition . . . includes, but is not limited to, the obligations of Borrower to pay to Lender the principal and interest owing pursuant to the terms and conditions of the Note."  Exhibit K § 2.1, at 9.

46.     Section 3.1 of the Mortgage provides that "Borrower will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Security Instrument." Exhibit K § 3.1, at 9.

47.     Morgan Stanley, as lender, Tenant and Borrower entered into that certain Subordination, Non-Disturbance and Attornment Agreement dated as of March 8, 2013 (the "SNDA").  A true and correct copy of the SNDA is attached as Exhibit L.

48.     Pursuant to the SNDA, "Tenant agreed to subordinate the lien of the Lease to the lien of the Assignment of Leases and Rents and Lender has agreed to grant non-disturbance to Tenant under the Lease."  Exhibit L (Recital E), at 2.

49.     Section 2 of the SNDA provides, in pertinent part:

> If any action or proceeding is commenced by Lender for the foreclosure of the [Assignment of Leases and Rents] or the sale of

13

> the Property, Tenant and any Qualifying Mortgagee (as defined in the Lease) shall not be named as a party therein unless such joinder shall be required by law, provided, however, such joinder shall not result in the termination of the Lease or disturb the Tenant's possession or use of the premises demised thereunder, and the sale of the Property in any such action or proceeding and the exercise by Lender of any of its other rights under the Note, the [Assignment of Leases and Rents] or the other Loan Documents shall be made subject to all rights of Tenant under the Lease . . . *provided that at the time of the commencement of any such action or proceeding or at the time of any such sale or exercise of any such other remedy by Lender no Event of Default (as defined in the Lease) then exists.*

Exhibit L § 2, at 2 (emphasis added).

50.    As more fully set forth above, at the time of the commencement of this action, an Event of Default has occurred and is continuing under the Lease.

**The Guaranty**

51.    As an inducement to Lender entering into the Loan Agreement, Lender also required that Borrower arrange for certain guaranties of Borrower's obligations.

52.    In connection with the Loan Agreement, Borrower caused Guarantor to execute and deliver to Morgan Stanley that certain Guaranty of Recourse Obligations of Borrower, dated as of March 8, 2013 (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "Guaranty").  A true and correct copy of the Guaranty is attached as Exhibit M.

53.    In connection with the Loan Agreement, Borrower and Guarantor executed and delivered to Morgan Stanley that certain Environmental Indemnity Agreement, dated as of March 8, 2013 (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "EIA").  A true and correct copy of the EIA is attached as Exhibit N.

14

22447047

**Borrower's Default**

54.     Among other defaults, Borrower has failed to comply with the terms of the Loan

Documents by failing to make regularly schedule payments of interest in respect of the Loan from

May 5, 2020 through July 5, 2021 (collectively, the "Specified Interest Payment").

55.     The Loan Agreement provides, in pertinent part:

> Section 10.1. Event of Default. (a) Each of the following events shall
> constitute an event of default hereunder (an "Event of Default"): (i)
> if Borrower shall fail to (i) pay when due (A) any sums by which the
> express terms of this Agreement and the other Loan Documents
> require immediate or prompt payment without any grace period
> (including, without limitation, any mandatory prepayment pursuant
> to Section 2.4.2 hereof) . . . .

Exhibit A § 10.1(a)(i), at 86.

56.     The Loan Agreement provides, in pertinent part:

> Upon the occurrence of an Event of Default. . . Lender may, in
> addition to any other rights or remedies available to it pursuant to
> this Agreement and the other Loan Documents or at law or in equity,
> take such action, without notice or demand, that Lender deems
> advisable to protect and enforce its rights against Borrower and in
> and to the Property, including, without limitation, declaring the Debt
> to be immediately due and payable, and Lender may enforce or avail
> itself of any or all rights or remedies provided in the Loan
> Documents against Borrower and the Property, including, without
> limitation, all rights or remedies available at law or in equity; and
> upon any Event of Default described in clauses (vi) or (vii) above
> with respect to the Borrower and/or SPC Party only, the Debt and
> the all other obligations of Borrower hereunder and under the Loan
> Documents shall immediately and automatically become due and
> payable, without notice or demand, and Borrower hereby expressly
> waives any such notice or demand, anything contained herein or in
> any other Loan Documents to the contrary notwithstanding.

Exhibit A § 10.1(b), at 90.

22447047

57.     As a result of Borrower's failure to make the Specified Interest Payment, an Event of Default has occurred and is continuing as of the date hereof.

58.     On June 17, 2020, the Special Servicer of the Loan, LNR Partners LLC ("Special Servicer"), acting on behalf of Lender, sent Borrower a letter (the "Default Notice"), wherein Special Servicer notified Borrower of Borrower's "failure to make regularly scheduled payments of interest in respect of the Loan" on May 5, 2020 (the "May Interest Payment") and on June 5, 2020 (the "June Interest Payment"; together with the May Interest Payment, individually and/or collectively, as the context may require, the "May and June Interest Payment").  A true and correct copy of the Default Notice is attached as Exhibit O.

59.     The Default Notice further stated that "[a]s a result of Borrower's failure to make the [May and June] Interest Payment, an Event of Default has occurred and is continuing as of the date hereof (such Event of Default, the "Specified Event of Default")."  Exhibit O at 2.

60.     Pursuant to the Default Notice, Special Servicer stated that "Lender will take all such actions as it deems appropriate to protect its interest in the Loan and to collect the debt thereunder, including, without limitation, seeking foreclosure and/or reconveyance of its security under the Loan Documents without further notice or demand except as required pursuant to state law and the Loan Documents."  Exhibit O at 2.

61.     The Default Notice further provides that "[i]n the event any such actions are taken, Lender will also seek to recover its additional costs and expenses, including attorney's fees and court costs, incurred in any collection efforts."  Exhibit O at 2.

62.     On October 23, 2020, Special Servicer, acting on behalf of Lender, sent Borrower a notice of default and notice of acceleration (the "Acceleration Notice"), a true and correct copy

16

22447047

of the Acceleration Notice is attached as Exhibit P, wherein Special Servicer advised Borrower that as a result of Borrower's continued default under the Note and the other Loan Documents, Lender was declaring "the unpaid principal amount of and any and all accrued and unpaid interest on the Loan and any and all accrued fees and other Obligations hereunder to be immediately due and payable." Exhibit P at 2-3.

63.     On June 14, 2021, Special Servicer, on behalf of Lender, sent Borrower a letter via overnight mail in accordance with the terms of the Loan Agreement enclosing the Notice to Commercial Mortgagor / Commercial Mortgagor's Declaration of Hardship During the COVID-19 Pandemic (the "Hardship Declaration").  True and correct copies of the June 14, 2021 letter enclosing the Hardship Declaration and Affirmation of Service evidencing service of the Hardship Declaration are attached as Exhibits Q and R, respectively.

64.     As of the date of filing of this Complaint, Borrower has not returned the hardship declaration to Lender or Special Servicer.

65.     No other action or proceeding has been had at law or otherwise for the recovery of the indebtedness secured by the Property herein sought to be foreclosed, or any part thereof, within the prohibition of N.Y. Real Prop. Acts. Law § 1301.

**Waiver of Counterclaims**

66.     Pursuant to Section 11.19 of the Loan Agreement, Borrower waived the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Lender or its agents.  Exhibit A § 11.19, at 102-03.

17

22447047

## FIRST CAUSE OF ACTION
### (*Foreclosure of the Mortgage*)

67.     Lender repeats and realleges each and every allegation set forth in paragraphs 1 through 66 hereof as if fully set forth herein.

68.     Borrower has committed multiple Events of Default under the Loan Agreement, including failing to make the regularly scheduled Specified Interest Payments, and accordingly Lender is entitled to foreclose the Mortgage due to the Specified Event of Default.

69.     Lender is the lawful owner and holder of the Note and the Loan Agreement as well as the Mortgage.

70.     As of July 15, 2021, there remains due and owing to Lender from Borrower under the Note and the Mortgage the entire outstanding principal balance of the Loan in the amount of $275,000,000, together with all the late charges, accrued interest, and all other sums secured by the Mortgage and the other Loan Documents.

71.     By virtue of the Acceleration Notice following the occurrence of the Specified Event of Default, the entire outstanding principal balance of the Loan, all accrued and unpaid interest thereon and all other sums owing under the Loan Documents are currently due and payable.

72.     All Defendants have, may have or claim to have some interest or lien upon the Property, which interest or lien, if any, is subsequent and/or subordinate to Lender's lien including, but not limited to, Tenant's interest in the Lease.

73.     No persons (including Borrower and all other named defendants herein) have, may have, or claim to have any interest or lien upon the Property that is superior to Lender's interest in or lien upon the Property.

22447047

74.     To protect its security during the pendency of this action, Lender may be compelled to pay taxes, assessments, water rates, and/or insurance premiums or other charges or expenses related to the Property and has incurred, and will in future incur, expenses of litigation (including attorneys' fees) in connection with the within action to foreclose and to collect the indebtedness secured by the Mortgage.  Lender requests that any sums thus paid by it for said purposes (together with interest and loan fees thereon) be added to the indebtedness otherwise then due, be secured by the Mortgage, earn default interest thereafter and be adjudged a valid lien on the Property as provided in the Mortgage.

75.     Lender shall not be deemed to have waived, altered, released or changed any election hereinbefore made, by reason of the payment after the date of the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective.

76.     All required mortgage tax associated with the Mortgage has been paid.

77.     Lender has no adequate remedy at law.

78.     None of the Defendants are infants, absentees or incompetents, nor have they been proceeded against as such.

79.     All conditions precedent necessary to bring forth the claim(s) set forth herein have been satisfied.

80.     By virtue of the foregoing, Lender is entitled to a judgment of foreclosure under the Mortgage.

81.     Upon the issuance of the requested judgment of foreclosure and the occurrence of the sale requested herein, the Property should be sold subject to (a) any covenants, restrictions,

easements and public utility agreements of record; (b) any state of facts that an accurate survey and physical inspection would show; (c) any restrictions, regulations and building and zoning ordinances of any municipal authority having jurisdiction thereof; (d) any municipal, departmental and other governmental violations; (e) any lien or liens of unpaid taxes, assessments, sewer rents and water rates or charges for maintenance of street vaults, if any; and (f) any prior liens of record.

82.     Upon motion by Lender, Lender is entitled to the appointment of a temporary receiver to protect the Property and collateral during the pendency of this action pursuant to Section 11.22 of the Loan Agreement.   Exhibit A § 11.22(d), at 104.

## SECOND CAUSE OF ACTION
### (*Foreclosure of the Security Agreements*)

83.     Lender repeats and realleges each and every allegation set forth in paragraphs 1 through 82 hereof as if more fully set forth herein.

84.     This cause of action is to foreclose the Mortgage insofar as it constitutes security agreements under the Uniform Commercial Code of the State of New York ("UCC").

85.     The Mortgage constitutes a "security agreement" within the meaning of, and creates a security interest under, the UCC, with respect to all accounts, fixtures and personalty, general intangibles, inventory, and other collateral constituting a part of the Personal Property.   In the Mortgage, Borrower granted to Lender a security interest and lien in all rights, titles, and interests then owned or thereafter acquired by Borrower in the Personal Property.

86.     To perfect its security interest in the Personal Property, Morgan Stanley filed a UCC Financing Statement on March 20, 2013 with the Delaware Department of State (the "State Office") as Filing No. 20131064709 which names Morgan Stanley as the secured party and

20

Borrower as the debtor (the "Financing Statement").  A true and correct copy of the Financing Statement is attached hereto as Exhibit S and incorporated herein by reference.

87.     In connection with assignment of the Mortgage to Plaintiff, Morgan Stanley filed a UCC Financing Statement Amendment on May 9, 2013 in the State Office as Amendment No. 20131777870 which assigned the State Financing Statement to Plaintiff (the "Financing Statement Amendment").  A true and correct copy of the Financing Statement Amendment is attached hereto as Exhibit T and incorporated herein by reference.

88.     As set forth above, Borrower has committed numerous breaches of its obligations under the Mortgage and other Loan Documents, which breaches amount to Events of Default under the Mortgage and other Loan Documents.  Lender therefore is now entitled to foreclose upon its perfected security interest in, and take possession of the Personal Property and to receive the proceeds from the sale thereof toward satisfaction of Borrower's indebtedness, or to have the Personal Property deemed part of the Property upon foreclosure and sale thereof, without waiver of any of Lender's other rights and remedies.

### THIRD CAUSE OF ACTION
### (*Enforcement of Assignment of Leases and Rents contained in Mortgage*)

89.     Lender repeats and realleges each and every allegation set forth in paragraphs 1 through 88 hereof as if more fully set forth herein.

90.     Under the Assignment of Leases and Rents contained in paragraph 1.1(h) of the Mortgage, Borrower expressly agreed to "irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Lender, and grant a security interest to Lender in, the

following property, rights, interests and estates now owned, or hereafter acquired by Borrower (collectively, the 'Property')."  Exhibit K § 1.1, at 3; *id*. § 1.1(h), at 5-6.

91.     Under the Assignment of Leases and Rents, Borrower also absolutely and unconditionally assigned to Lender "all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only."  Exhibit K § 1.2, at 7.

92.     Pursuant to the Assignment of Leases and Rents, Lender granted Borrower "a revocable license to collect, receive, use and enjoy the Rents."  Exhibit K § 1.2, at 7.  Pursuant to that revocable license, Borrower "shall hold the Rents or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such terms."  Exhibit K § 1.2, at 7.

93.     As a result of such Specified Event of Default, Lender is entitled to exercise remedies under the Loan Agreement and the Assignment of Leases and Rents and all other collateral assigned therein.   Upon the occurrence of an Event of Default under the Loan Documents, the revocable license granted to Borrower is automatically revoked and Lender shall immediately be entitled to receive and apply all rents.

94.     No other action or proceeding has been had at law or otherwise for recovery under the Assignment of Leases and Rents being foreclosed by Lender.

95.     Lender has no adequate remedy at law.

96.     By virtue of the foregoing, Lender is entitled to and should be granted, a judgment of specific performance of Borrower's duties under the Assignment of Leases and Rents, mandating that Borrower shall deliver to Lender all Rents and Leases, if any, collected or held by

Borrower from and after the occurrence of the Specified Event of Default, or hereafter collected or held by Borrower, and requiring Borrower to account therefore, and directing Borrower to pay Lender expenses, including its reasonable attorneys' fees and expenses.

97.     By virtue of the foregoing, Lender is entitled to and should be granted a judgment of foreclosure under the Assignment of Leases and Rents.

**FOURTH CAUSE OF ACTION**
***(Judgment Against Guarantor for Transfer Taxes)***

98.     Lender repeats and realleges each and every allegation set forth in paragraphs 1 through 97 hereof as if more fully set forth herein.

99.     The Guaranty constitutes a valid and enforceable contract between Guarantor and Lender, which sets forth Guarantor's obligations to "absolutely and unconditionally guarantee[] to Lender the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower[.]" Exhibit M (Preamble), at 1 (alteration added).

100.     Pursuant to the Guaranty, Guaranteed Recourse Obligations of Borrower is defined to include "all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 11.22 of the Loan Agreement," which includes, among other obligations, "Borrower's indemnification of Lender set forth in Sections 9.2, 11.13.3 and 11.13.4 hereof." Exhibit M § 4, at 1; Exhibit A § 11.22(xiv), at 106.

101.     Pursuant to Section 11.13.3 of the Loan Agreement, Borrower shall "at its sole cost and expense, protect, defend, indemnify, release and hold harmless each Lender Indemnitee from and against any and all Losses imposed upon or incurred by or asserted against any Lender Indemnitee and directly or indirectly arising out of or in any way relating to…any transfer tax

incurred by any Lender Indemnitee in connection with the exercise of remedies hereunder, under the Security Instrument or under any other Loan Documents, including, without limitation, any Transfer Taxes (as defined in the Security Instrument). . . ." Exhibit A § 11.13.3, at 100.

102.    Accordingly, based on the foregoing, Guarantor is required to pay the Transfer Taxes that Lender will incur if Lender is the purchaser of the Property at the referee's sale in connection with this foreclosure action.

103.    Lender has complied with all of its obligations under the Guaranty and the Loan Documents.

104.    Accordingly, Lender is entitled to a money judgment against Guarantor in the amount of the Transfer Taxes Lender will incur if Lender is the purchaser of the Property at the referee's sale in connection with this foreclosure action, plus interest, attorneys' fees and expenses.

**PRAYER FOR RELIEF**

**WHEREFORE**, Lender respectfully demands entry of judgment on its three causes of action, as against Defendants, as follows:

a)      adjudging that Defendants, including but not limited to, any purported holder, whether direct or indirect, of the leasehold interest of Tenant or Subtenant, or any other purported lessee of the Property, and all persons claiming by, through, or under them and every person or entity whose right, title, interest, conveyance, or encumbrance is recorded subsequent to the filing of the Notice of Pendency of this action in the Office of the Clerk of New York County with respect to this Complaint and this Action, be barred and foreclosed of all right, title, interest, claim, lien, and equity of

24

redemption in and to the Property and each and every part thereof including, but not limited to, any fixtures and the Personal Property upon which the Mortgage is a lien attached to or used in connection with said premises;

b)    directing that said Property and Personal Property be sold according to law and that the moneys arising from such sale be brought into Court; and that all of the Property shall first be offered as one parcel; and that Defendants shall surrender possession to the purchaser or purchasers, of all items of property sold at the foreclosure sale;

c)    upon motion by Lender, appointing a receiver to collect the rents, issues, benefits and profits of the Property during the pendency of this action or to perform such other acts as the Court orders and deems appropriate;

d)    awarding Lender the amounts due under the Loan Documents from the proceeds of the foreclosure sale with any and all applicable interest thereon to the time of such payment, together with the expenses of the sale and the costs, allowances, disbursements of this action, any sums advanced or paid by Lender to protect the lien of the Mortgage including, but not limited to, taxes, water and sewer charges, assessments, insurance premiums and repair and maintenance costs in connection with the Property, late charges due under the Loan Documents, and all other charges which may have been advanced by Lender to protect the security afforded by the Mortgage and all other charges and liens on the Property to be paid, with appropriate interest thereon from the dates of the respective payments and advances

25

thereof, so far as the amounts of such monies properly applicable thereto will pay the same, together with Lender's attorneys' fees, cost and expenses of this action and all proceedings therein;

e)      directing that Lender may specifically enforce each and every contract, right and agreement assigned to it by defendants, as Lender may choose in its own discretion not inconsistent with foreclosure of the Mortgage;

f)      declaring that the referee (or other officer) making such sale pay from the proceeds thereof all taxes, assessments, valuations and other charges which are liens on the property sold;

g)      directing that Lender be awarded a deficiency judgment against Borrower pursuant to the Mortgage for an amount equal to any deficiency in the payment of their respective obligations to the Lender that may remain, to the extent that Borrower is liable therefor pursuant to the Loan Agreement, or so much thereof as the Court may determine to be just and equitable, after a sale of the Property and the application of the proceeds pursuant to the directions contained in such judgment, the amount thereof to be determined by the Court as provided in N.Y. Real Prop. Acts. Law § 1371, together with late charges on such amount, together with interest thereon allowable under law, plus the reasonable costs and expenses incurred by Lender in collecting such amounts (including, without limitation, attorneys' fees and costs);

h)      directing that Lender be awarded a deficiency judgment against Guarantor pursuant to the Guaranty for an amount equal to any deficiency in the payment of its obligations to the Lender that may remain, to the extent that Guaranty is liable therefor pursuant to the Guaranty;

i)      entering a money judgment against Guarantor in the amount of the Transfer Taxes that may be incurred by Lender if Lender is the purchaser at the referee's sale of the Property in connection with this foreclosure action, plus interest, attorneys' fees and expenses;

j)      directing that advertisement of the notice of sale be made in New York County;

k)      directing that the purchaser or purchasers at said sale be let into possession on production or delivery of referee's deed or deeds; and

l)      awarding to Lender such other and further relief as may be just and proper, including costs, disbursements and reasonable attorneys' fees in this action to which Borrower expressly consented pursuant to Section 11.13.1(a) of the Loan Agreement, Exhibit A § 11.13.1(a), at 98.

27

Dated:     New York, New York
           July 14, 2021

                              FRIED, FRANK, HARRIS, SHRIVER
                                & JACOBSON LLP

                              By:                 */s/ Janice Mac Avoy*
                                                  Janice Mac Avoy

                              One New York Plaza
                              New York, New York 10004-1980
                              (212) 859-8000
                              janice.macavoy@friedfrank.com

                              *Attorneys for Plaintiff*
                              *Wells Fargo Bank, National Association, as Trustee*
                              *for Morgan Stanley Bank of America Merrill Lynch*
                              *Trust 2013-C9, Commercial Mortgage Pass-*
                              *Through Certificates, Series 2013-C9*

22447047